## CHICAGO AND ERIE RAILROAD COMPANY *v.* GINTHER, ADMINISTRATOR.

[No. 6,618. Filed February 18, 1910. Rehearing denied December 15, 1910. Transfer denied June 2, 1911.]

1. NEGLIGENCE.—*Contributory.—Burden of Pleading and Proving.*— The burden of proving contributory negligence rests upon the defendant (§362 Burns 1908, Acts 1899 p. 58). pp. 13, 19, 20.

2. RAILROADS.—*Crossing Accidents.—Negligence.—Proximate Cause. —Complaint.*—A complaint alleging that plaintiff's decedent was driving a team hitched to a wagon over defendant railroad company's track on a highway crossing, that defendant negligently ran its train at an excessive speed and failed to sound the whistle or to ring the bell as it approached the crossing, that a storm was raging and decedent was unable to hear the train until it was too late, that the defendant negligently failed to place a headlight on the locomotive, and that the locomotive so negligently run "struck said team and wagon * * * and killed the decedent," sufficiently shows that the decedent was killed by the engine, and that the alleged negligence was the proximate cause of the death. p. 14.

3. APPEAL. —*Weighing Evidence. — Negligence. — Contributory.* — Where the evidence as to defendant's negligence and the decedent's contributory negligence is conflicting, the verdict of the jury is conclusive on appeal. p. 15.

4. RAILROADS.—*Crossing Accidents.—Failure to Give Signals.— Absence of Headlight.—Excessive Speed.—Contributory Negligence.—Instructions.*—In an action for the death of a traveler killed upon a highway crossing, an instruction that in determining the question of the decedent's contributory negligence the jury might consider the facts, if proved, that the defendant railroad company failed to sound the whistle or to ring the bell, as the train approached the crossing, and that the train was running without a headlight at a high speed on a dark, stormy night, was properly given. p. 15.

5. RAILROADS.—*Crossing Accidents.—Due Care.—Presumptions.*— A traveler killed on a highway crossing is presumed to have used due care as well as to have seen and heard what was visible and audible. p. 20.

6. RAILROADS.—*Crossing Accidents.—Contributory Negligence.— Evidence.*—In determining the question of the contributory negligence of a traveler injured or killed upon a highway crossing, the jury should consider all the circumstances, including the railroad company's conduct. p. 20.

From Pulaski Circuit Court; *J. C. Nye,* Judge.

Action by George A. Ginther, as administrator of the estate of Joseph W. Davis, deceased, against the Chicago and Erie Railroad Company. From a judgment for plaintiff for $5,375, defendant appeals. *Affirmed.*

*W. O. Johnson, George C. Gale, Henry A. Steis, Ulric Z. Wiley* and *A. H. Jones,* for appellant.

*M. Winfield* and *M. M. Hathaway,* for appellee.

MYERS, C. J.—Appellee, administrator of the estate of Joseph W. Davis, deceased, recovered a judgment against appellant, whose train of cars ran down the decedent, while driving his team of horses attached to a wagon over a public crossing of appellant's railroad track, on a dark, rainy night.

A demurrer to the complaint for want of facts was overruled, as was also appellant's motion for a new trial.

It is claimed, on behalf of appellant, that there are no facts alleged in the complaint showing the negligent act complained of to have been the proximate cause of the injury; that the allegations do not sufficiently show that decedent was struck and killed by the engine, but only that it might be so inferred from the facts stated. It is also contended that the complaint does not sufficiently show that decedent exercised the care and caution required of him by law.

The burden as to contributory negligence being by statute (§362 Burns 1908, Acts 1899 p. 58) placed upon defendant, in a case for personal injury or death wrongfully

1. inflicted, it is not necessary for plaintiff to show affirmatively in the complaint that his decedent was free from fault, and we need not set forth allegations of the complaint with a view to determining whether they show freedom from fault, there being no claim that they affirmatively show fault on the part of decedent.

After alleging that it was a dark and stormy evening, and

that the decedent was driving homeward, it was alleged that
he drove his team upon the crossing, and as he en-
2.    tered thereon, going north, the train in question
going east "at a high rate of speed and more than
two hours late, propelled by a locomotive, struck said team
and wagon with great force, killed said team of horses in-
stantly, destroyed said wagon and harness, and killed de-
cedent, * * * that decedent was killed solely by reason
of being struck by said locomotive pulling said train;
* * * that decedent was thus killed, and the team of horses
and wagon destroyed, solely by and through the negligence
of defendant, its agents and servants operating said train;
that there was no headlight on the engine to give any warn-
ing; that no whistle was sounded nor bell rung for said
crossing; that, by reason of the intense darkness, decedent
could not see said train approaching; that, because the
wind was blowing in the opposite direction to the approach of
the train, he could not hear its approach; that if a headlight
had been displayed on said locomotive, decedent could have
seen the train in time to avoid the injury; that had the
whistle been sounded within eighty rods and not more than
one hundred rods from said crossing, decedent would have
heard it and avoided the injury; that had said bell been
rung continuously from a point not less than eighty rods
nor more than one hundred rods from said crossing until
said engine had approached said crossing, decedent would
have heard it; that by reason of the aforesaid negligence
on the part of defendant, by its agents and employes, in
failing to have the headlight on its locomotive, and to sound
the whistle and to ring the bell as aforesaid, decedent was
lured to said place of danger and killed, and said team of
horses and wagon were destroyed; * * * that under the
rules of said company, and all other railroad companies,
headlights are required to be displayed at night on the front
of engines, which headlights give to persons who might be
at or near crossings, notice of the approach of trains; that

such was the rule of defendant railroad company at that time, and for a long time prior thereto; that on this particular evening of June 17, 1905, defendant's agents and servants in the employ of defendant, and while in the line of their employment, neglected and failed to have said headlight displayed on the front of the engine, but carelessly, negligently and recklessly ran said train on a dark and stormy night at a high rate of speed as aforesaid, without any such light; that by reason of the aforesaid facts, and the failure of the agents and servants of defendant in charge of said engine of said defendant to sound the whistle and ring the bell as aforesaid, decedent was killed, and not otherwise.''

It might be said that the pleading is not well arranged, yet we think it not properly subject to the objections urged against it.

We are asked to reverse the judgment upon the evidence. While upon material matters of fact the evidence is quite conflicting and exceedingly persuasive of a different conclusion from that reached by the jury, yet, after a careful analysis of it, we must conclude that there was such evidence upon the question of the negligence of appellant and the contributory negligence of decedent that it was properly left to the jury. This being true, we would not be authorized to reverse the judgment upon the evidence alone, without overreaching our true province.

It is earnestly argued that there was error in the instructions to the jury, on the ground that the court permitted the jury, in determining the question as to decedent's contributory negligence, to take into consideration the effect upon his conduct of certain negligent acts or omissions on the part of appellant; as the failure to give the statutory signals and the failure to carry a lighted headlight upon the locomotive, running at a high rate of speed on a dark and stormy night.

In the same connection the court instructed the jury that

it was proper to consider all the evidence surrounding the accident, together with all the other evidence in the case showing the surroundings and opportunities, or want of opportunities, if any, the decedent had of seeing or hearing the approaching train. Also, the jury was instructed, at the request of the appellant, that it is a presumption of law that a traveler who is approaching and about to cross a railroad track saw whatever was within the range of his vision, had he looked, and heard whatever he might have heard had he listened, and if, on account of darkness, physical infirmities, the inclemency of the weather, or of other obstructions or hindrances, it was more difficult to see or hear, all the greater must be the precautions taken by the traveler, and, therefore, if the jury believed from all the evidence in the case, that, under the facts and circumstances shown in the case, decedent, if he had looked, could have seen, and if he had listened, could have heard the train which struck him in time to avoid the injury, then, notwithstanding it might believe appellant was guilty of negligence in failing to give the proper signals before the train reached the crossing where decedent was struck, and in failing to have a headlight lighted and burning on the engine which struck him, the verdict should be for appellant; and further, that it is the duty of a traveler upon a highway, in attempting to cross a railroad track, to look and listen attentively to determine whether it is safe for him to cross; and that if the jury believed from all the evidence in the case that decedent, before he came to the crossing where he was injured, by looking, could have seen, or, by listening, could have heard the approaching train in time to escape injury, then it will be presumed either that he did not look or listen, or that, if he did look and listen, he did not heed what he saw or heard, and, therefore, he would be guilty of contributory negligence, and appellee would not be entitled to recover in this case; further, that a railroad track is itself an admonition of danger, and a traveler on a public

highway is bound to know that there may be peril in attempting to cross, and that he must yield precedence to the train of the railroad company; further, that the failure of the railroad company to ring a bell, sound a whistle, or display a headlight, will not excuse the failure on the part of the traveler on a highway approaching a railroad crossing to use his senses of sight and hearing to discover whether there is danger in going upon the crossing; and that it is the presumption of law that every person is possessed of normal faculties, and that his eyesight and hearing are as good as the average, unless the contrary be shown by affirmative proof.

In the case of *Chicago, etc., R. Co.* v. *Hedges* (1886), 105 Ind. 398, 407, it was said that "if there was any evidence tending to show that the plaintiff's intestate was thrown off his guard by such means as might have such effect upon an ordinarily prudent man, * * * it was not wrong to submit to the jury the question of contributory negligence." In that case, *Indianapolis, etc., R. Co.* v. *McLin* (1882), 82 Ind. 435, was cited, wherein it was said that "while it is true that the failure of appellant to give warning did not relieve the appellee's son from exercising care to avoid injury, yet the absence of such warning is a circumstance to be taken into consideration in determining whether he did exercise the degree of care required or not."

In the case of *Terre Haute, etc., R. Co.* v. *Brunker* (1891), 128 Ind. 542, it was held that travelers upon a highway, approaching a railway crossing, have a right to rely upon the giving of the signal, and that as between the railroad company and the traveler approaching cautiously, the company is at fault if, by failing to give the lawful signals, it induced the traveler to approach within an unsafe proximity to the crossing. Citing *Indianapolis, etc., R. Co.* v. *McLin, supra,* and other cases.

In the case of *Cleveland, etc., R. Co.* v. *Harrington* (1892), 131 Ind. 426, it was said: "In the absence of some evidence

to the contrary, we think the appellee had the right to presume that the appellant would obey the city ordinance and would not run its trains at a greater rate of speed than four miles an hour at the point where the injury occurred, and while the wrongful conduct of the appellant in this regard would not excuse her from the exercise of reasonable care, yet in determining whether she did use such care her conduct is to be judged in the light of such presumption.''

In the case of *Chicago, etc., R. Co.* v. *Boggs* (1885), 101 Ind. 522, 527, 51 Am. Rep. 761, it was said: ''It is, indeed, a general rule that citizens have a right, within reasonable limits, to act upon the presumption that a corporation charged with a duty will perform it.''

In the case of *Pittsburgh, etc., R. Co.* v. *Martin* (1882), 82 Ind. 476, 483, the court said: ''The signal required by the law not being given, the view being obstructed, and the plaintiff not being hard of hearing, he had no reason to suppose that the train was within eighty rods of the crossing; he was misled by the defendant's negligence in omitting the proper signal; he was not guilty of negligence in assuming, in the absence of any indication to the contrary, that the company was obeying the law, and that no engine was advancing toward the crossing within a distance of eighty rods.'' See, also, *Pittsburgh, etc., R. Co.* v. *Burton* (1894), 139 Ind. 357, 376.

In the case of *Malott* v. *Hawkins* (1902), 159 Ind. 127, 135, the court, after referring to the precaution to be taken by travelers upon a highway in approaching a railroad crossing, said: ''A further proposition, based on the reciprocal rights of the railway company and a traveler at a public crossing, is that after a traveler has vigilantly used his senses to avoid danger, as stated above, and is unable to see or hear any approaching train, he may, while still exercising due care, assume that the company will not omit to give the usual, and especially the statutory signals, if a train

is really approaching. * * * The omission to give signals may, therefore, be an element in determining the question of contributory negligence.''

In the case of *New York, etc., R. Co.* v. *Robbins* (1906), 38 Ind. App. 172, this court said: ''The crossing signals were not given; and, while this did not excuse the decedent from the exercise of ordinary care, the jury had the right to take that fact into consideration in determining whether the decedent did exercise the degree of care required.'' See, also, *Grand Rapids, etc., R. Co.* v. *Cox* (1893), 8 Ind. App. 29; *Wabash R. Co.* v. *Biddle* (1901), 27 Ind. App. 161; *Baltimore, etc., R. Co.* v. *Rosborough* (1907), 40 Ind. App. 14; *Cleveland, etc., R. Co.* v. *Schneider* (1907), 40 Ind. App. 38.

Counsel for appellant direct our attention to the case of *Louisville, etc., R. Co.* v. *Stommel* (1890), 126 Ind. 35. After all that was said in that case apparently in favor of the contention of appellant, the question of contributory negligence of appellee's servant was left to depend upon what he did ''in the light of the *res gestae.*'' At all events, the later decisions heretofore noticed, make it clear that the position of appellant is not tenable. It is true the merely negligent quality of the acts or omissions of defendant cannot determine that the conduct of plaintiff was negligent; but the acts or omissions of defendant may constitute parts of the circumstances in which plaintiff's decedent was involved, and so may aid as facts in determining the question as to the prudence or imprudence of the traveler approaching the crossing.

In the case at bar, the burden was upon appellant to prove the contributory negligence of appellee's decedent. The openness of the country between decedent and the railroad track for a considerable distance in the direction from which the train approached was shown; but it was exceedingly dark and there was a drizzling rain, with

frequent lightning and thunder, and the wind blew in a direction other than from the approaching train to decedent.

The presumption in the decedent's favor, that he did not fail to exercise due care, could not be met by proof that he failed to look and listen, for he was traveling alone in the dark. But "a traveler approaching a railroad crossing of a highway is presumed in law to have seen what he could have seen, if he had looked attentively, and to have heard what he could have heard, if he had listened attentively." *Pittsburgh, etc., R. Co.* v. *Fraze* (1898), 150 Ind. 576. See, also, *Malott* v. *Hawkins, supra.*

In the case last mentioned it was held that our statute, relating to the burden of proof as to contributory negligence in such a case as this, does not abate the legal requirements that a traveler crossing a railroad track must use, or change the rule that it is presumed that the traveler saw and heard, or was heedless of that which, as an ordinarily prudent man, he ought to have taken notice. Of course, the burden of proof as to the facts from which a conclusion of contributory negligence arises is upon defendant. If it be material in such a matter to show that the country was open, without obstruction to sight and sound, it is not immaterial that the night was dark and stormy, with lightning, thunder, and wind blowing in such direction as not to carry sound of the moving train to the traveler, and in such case it cannot be said that the failure to give the statutory signals, and to carry the usual headlight, might not properly be considered by the jury in determining whether the traveler acted with ordinary prudence.

We find no available error. Judgment affirmed.